1   Brian Hennessy (SBN 226721)
    E-mail: BHennessy@perkinscoie.com
2   **Perkins Coie LLP**
    101 Jefferson Drive
3   Menlo Park, CA 94025-1114
    Telephone:  (650) 838-4300
4   Facsimile:  (650) 838-4350

5
    Elizabeth L. McDougall, WA Bar No. 27026 (*pro hac vice*)
6   E-mail: EMcDougall@perkinscoie.com
    **Perkins Coie LLP**
7   1201 Third Avenue, Suite 4800
    Seattle, Washington 98101-3099
8   Telephone: (206) 359-8000
    Facsimile: (206) 359-9000
9

10  Attorneys for Plaintiff
      craigslist, Inc.
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15

16  craigslist, Inc., a Delaware corporation,        **Case No. CV 08 5065 PJH**

17                  Plaintiff,                         **NOTICE OF MOTION AND MOTION OF**
                                                       **PLAINTIFF CRAIGSLIST, INC. FOR**
18          v.                                         **DEFAULT JUDGMENT AGAINST**
                                                       **DEFENDANTS NATUREMARKET, INC.**
19  Naturemarket, Inc. d/b/a                           **D/B/A POWERPOSTINGS.COM AND**
    powerpostings.com, Igor Gasov, and Does            **IGOR GASOV; MEMORANDUM OF**
20  2 through 25, inclusive,                           **POINTS AND AUTHORITIES IN**
                                                       **SUPPORT THEREOF**
21                  Defendants.

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND PROCEDURAL HISTORY ....................................................2

II.   FACTUAL BACKGROUND ............................................................................................3

    A.    CRAIGSLIST'S WEBSITE AND TOUs ................................................................3

    B.    CRAIGSLIST SECURITY MEASURES ................................................................4

    C.    DEFENDANTS' ABUSE, INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS ...........................5

        1.    Defendants' Products and Services That Violate craigslist's Website, Services, and Rights ................................................................5

        2.    Defendants' Devices for Circumventing craigslist's Security Measures .............................................................................................6

        3.    Defendants' Unauthorized Use of the CRAIGSLIST Mark.......................7

    D.    DEFENDANTS ARE UNJUSTLY ENRICHED BY THEIR ABUSE, INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS ................................8

    E.    MEANWHILE CRAIGSLIST IS SUFFERING MONETARY AND INTANGIBLE INJURIES FROM DEFENDANTS' ACTIONS ................................................................................................9

III.  DISCUSSION .................................................................................................................9

    A.    CRAIGSLIST IS ENTITLED TO DEFAULT JUDGMENT ..........................10

        1.    Prejudice to craigslist.................................................................10

        2.    Merits of the Substantive Claims and Sufficiency of the Complaint ........11

            a.    Copyright Infringement, 17 U.S.C. § 101, et seq. ........................11

            b.    Digital Millennium Copyright Act Violation, 17 U.S.C. § 1201, et seq. ................................................................12

            c.    Computer Fraud and Abuse Act Violation, 18 U.S.C. § 1030 ......12

            d.    Cal. Pen. Code § 502 Violation ................................................13

            e.    Federal Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a) ................................................................................14

            f.    California Common Law Trademark Infringement.......................14

            g.    Breach of Contract ................................................................14

            h.    Inducing Breach of Contract and Intentional Interference with Contractual Relations ................................................15

            i.    Fraud ................................................................................15

            j.    Defendants' Violations Were Knowing, Deliberate, Intentional, Willful, and Undertaken with Conscious Disregard for craigslist's Rights................................................16

        3.    Sum of Money at Stake.................................................................17

        4.    The Possibility of Disputed Material Facts and Whether Default was Due to Excusable Neglect ................................................17

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3        5.   Federal Rules of Civil Procedure Policy Favoring Decisions on the Merits...................................................................................18

4     B.   CRAIGSLIST IS ENTITLED TO APPROPRIATE RELIEF ............................18

5       1.   Injunctive Relief Is Appropriate and Necessary .....................................18

6       2.   Monetary Damages Are Also Appropriate and Necessary.......................19

7         a.   Defendants' Failure to Appear Impedes craigslist's Damages Case..................................................................................................20

8         b.   Award of DMCA Statutory Damages.........................................20

9         c.   Award of Actual Damages ...........................................................22

      d.   Award of Punitive/Exemplary Damages.....................................23

10     C.   CRAIGSLIST IS ENTITLED TO ATTORNEYS' FEES AND COSTS .........................................................................................................24

11   IV.   CONCLUSION .........................................................................................................24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**Cases**

5
*3A Entm't Ltd. v. Constant Entm't, Inc.*, No. C 08-01274 JW, 2009 WL 248261
(N.D. Cal. Jan. 30, 2009) ................................................................................................18

6
*Adobe Systems, Inc. v. Taveira*, 2009 WL 506861 (N.D. Cal. 2009) ...........................................10

*Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995) ............................................................9

7
*Arista Records, Inc. v. Beker Ent., Inc.*, 298 F. Supp. 2d 1310 (S.D. Fla. 2003) .............. 10, 17, 19

8
*Atari v. Sega of Am.*, 161 F.R.D. 417 (N.D. Cal. 1994)..................................................................9

9
*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371
(Cal. App. 1990) .............................................................................................................14

10
*Chamberlain Group v. Skylink Technologies, Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) ...................12

11
*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106
F.3d 284 (9th Cir. 1997), *rev'd on other grounds Feltner v. Columbia Pictures
Television, Inc.*, 523 U.S. 340, 118 (1998).....................................................................10

12

*Coxcom Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008).................................................................24

13
*Cybersell v. Cybersell*, 130 F.3d 414 (9th Cir. 1997) .................................................................10

14
*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986)...................................................... 10, 11, 17, 18

15
*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ..................................................................12

*Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007)................................13

16
*Fallaci v. New Gazette Literacy Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983).............................17

17
*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).........................................11

18
*Google Inc. v. American Blind & Wallpaper*, No. C 03-5340 JF, 2007 WL
1159950 (N.D. Cal. April 18, 2008).................................................................................14

19
*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392 (9th Cir. 1986) ......................10

20
*Jackson v. Sturkie*, 255 F. Supp. 2d 1096 (N.D. Cal. 2003).......................................................19

*Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007) ........................... 9, 17, 20, 24

21
*Molnar v. 1-800-Flowers.com, Inc.*, No. 08-Cv-0542, 2008 WL 4772125 (C.D.
Cal. Sept. 29, 2008).........................................................................................................15

22

*Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) .........................15

23
*Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990)....................................21

24
*PepsiCo v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ....................................11, 18

25
*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999) ...............................................10

*Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal.
2003).......................................................................................................... 11, 17, 19

26

27
*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568 (N.D. Cal.
2008).................................................................................................................................8

28
*Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004)....................14

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982) .........................24

4

*Rio Properties, Inc. v. Rio International, Interlink*, 284 F.3d 1007 (9th Cir. 2002).....................24

*Shamblin v. Berge*, 166 Cal. App. 3d 118 (Cal. Ct. App. 1985)....................................................15

5

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal.

6

2006).................................................................................................................... 10, 17, 22, 24

*Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal.

7

2005)..................................................................................................................................21, 22

8

*Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074 (C.D. Cal. 1999)................................................10

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987)..........................................9, 17

9

*Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal.

10

2007).......................................................................................................... 11, 12, 13, 15

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y. 2003) ..............................................24

11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) .........................23

12

*Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000) ......................19

13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)....................................................15

*Williams v. Weisser*, 153 U.S.P.Q. 866 (Cal. Sup. 1967).............................................................23

14

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005) ...........................................................14

15

*Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062 (N.D. Cal. 1991)...................10

16

**Statutes**

17

15 U.S.C § 1117(a) .........................................................................................................................20

18

15 U.S.C. § 1116(a) ........................................................................................................................19

15 U.S.C. § 1117........................................................................................................................24

19

15 U.S.C. § 1117(a) ................................................................................................................. 19, 24

20

17 U.S.C. § 1201(a)(2)....................................................................................................................12

21

17 U.S.C. § 1201(b)(1)....................................................................................................................12

17 U.S.C. § 1203.............................................................................................................................18

22

17 U.S.C. § 1203(b)(1)....................................................................................................................19

23

17 U.S.C. § 1203(c) ........................................................................................................................19

24

17 U.S.C. § 1203(c)(2)....................................................................................................................20

17 U.S.C. § 1203(c)(3)....................................................................................................................20

25

17 U.S.C. § 1203(c)(3)(A)................................................................................................. 20, 21, 22

26

17 U.S.C. § 502(a) ..........................................................................................................................18

27

17 U.S.C. § 504...............................................................................................................................19

17 U.S.C. § 504(b) ..........................................................................................................................20

28

**TABLE OF AUTHORITIES**
(continued)

Page

18 U.S.C. § 1030(g) ..................................................................................18, 19

Cal. Civ. Code § 1671 ........................................................................................20

Cal. Civ. Code § 1709 ........................................................................................19

Cal. Civ. Code § 3294 ........................................................................................20

Cal. Civ. Code § 3300 ........................................................................................19

Cal. Civil Code § 3294 .......................................................................................23

Cal. Pen. Code § 502(e).....................................................................................18

Cal. Penal Code § 502(e) ...................................................................................19

Cal. Penal Code § 502(e)(4) .......................................................................20, 23

California Penal Code § 502 .........................................................................passim

California Penal Code § 502(c)(1)......................................................................13

California Penal Code § 502(c)(2)......................................................................13

California Penal Code § 502(c)(6)......................................................................13

California Penal Code § 502(e) ..........................................................................24

Computer Fraud and Abuse Act, 18 U.S.C. § 1030..................................... 2, 12

Copyright Infringement, 17 U.S.C. § 101, *et seq.* ..........................................11

Digital Millenium Copyright Act, 17 U.S.C. § 1201 *et seq.*..................... 2, 12

DMCA, 17 U.S.C. § 1203(a)(5).........................................................................24

Federal Trademark Infringement, 15 U.S.C. § 1116 .........................................18

Trademark Infringement, 15 U.S.C. §§ 1114 and 1125(a)..........................2, 14

**Regulations and Rules**

Fed. R. Civ. P. 55(a)..........................................................................................18

Fed. R. Civ. P. 55(a)............................................................................................9

Fed. R. Civ. P. 55(b)(2).....................................................................................24

Fed. R. Evid. 408 .................................................................................................9

TO THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 5, 2009, at 9:00 a.m. or as soon thereafter as the matter may be heard before Honorable Phyllis J. Hamilton, in the Courtroom of the United States District Court for the Northern District of California, Courtroom 5 located on the 17th Floor, at 450 Golden Gate Avenue, San Francisco, California, plaintiff craigslist, Inc. ("craigslist") will, and hereby does, move the Court for a default judgment against defendant Igor Gasov and defendant Naturemarket, Inc. d/b/a powerpostings.com (collectively, "Defendants"). The Clerk of the Court has previously entered the default of Naturemarket on March 30, 2009 for failure to respond to Plaintiff's Complaint within the time permitted by law. Default was entered as to Gasov on June 12, 2009, for failure to respond to the First Amended Complaint ("FAC") within the time permitted by law.

Plaintiff is entitled to judgment against Defendants on each of the claims pleaded in the Complaint and FAC. Judgment is sought for damages and reasonable attorneys' fees plus costs incurred, in an amount according to proof. Plaintiff further requests that this Court enter a permanent injunction against Defendants restraining them from engaging in future violations of Plaintiff's intellectual property and other rights.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the supporting declarations of Nicholas Manheim ("Manheim Decl."), David Weeks ("Weeks Decl."), and Elizabeth McDougall ("McDougall Decl.") filed concurrently herewith, and the pleadings and files in this action, and such other matters as may be presented at the hearing.

DATED: June 30, 2009                          **PERKINS COIE** LLP

By: */s/ Elizabeth L. McDougall*
  Brian Hennessy (SBN 226721)
  BHennessy@perkinscoie.com
  Elizabeth L. McDougall
  (WA Bar No. 27026)
  EMcDougall@perkinscoie.com
  James R. McCullagh, Bar No. 27744
  JMcCullagh@perkinscoie.com

Attorneys for Plaintiff
craigslist, Inc.

1

2                    I.      INTRODUCTION AND PROCEDURAL HISTORY

3           Plaintiff craigslist, Inc. ("craigslist") respectfully submits this Motion for Default

4  Judgment against defendant Igor Gasov and defendant Naturemarket, Inc. d/b/a

5  powerpostings.com (collectively, "Defendants").

6           On November 5, 2008, craigslist filed a Complaint against Naturemarket, Inc. and Does

7  1-25 for (1) Copyright Infringement, 17 U.S.C. § 101 et seq.; (2) violation of the Digital

8  Millenium Copyright Act, 17 U.S.C. § 1201 *et seq.*; (3) violation of the Computer Fraud and

9  Abuse Act, 18 U.S.C. § 1030; (4) violation of California Penal Code § 502; (5) Trademark

10  Infringement, 15 U.S.C. §§ 1114 and 1125(a); (6) Trademark Infringement Under California

11  Law; (7) Breach of Contract; (8) Inducing Breach of Contract; (9) Intentional Interference with

12  Contractual Relations; and (10) Fraud.  Electronic Case Filing Docket Entry ("DE") 1.  The

13  Complaint arose out of Defendants' development, distribution, and marketing of software and

14  services to enable automated posting of content on craigslist's services, to post content on

15  craigslist's website for their customers, to gather email addresses of craigslist users from the

16  craigslist website to send spam, and to circumvent technological security measures on the

17  craigslist website.  *Id.*  Defendants' activities violate craigslist's terms of use, impair the utility and

18  efficacy of the website for legitimate users, impose undue costs and burdens on craigslist's

19  resources and personnel, and harm craigslist's reputation and goodwill.  *Id.*

20           craigslist requested entry of default against Naturemarket, Inc. and Igor Gasov as John

21  Doe 1 on March 25, 2009, and on March 30, 2009, the Court entered default against

22  Naturemarket, Inc., but denied default against Igor Gasov as John Doe 1.  DE 21, 22.  On

23  March 31, 2009, craigslist filed its First Amended Complaint ("FAC") adding Igor Gasov as a

24  named defendant.  DE 23.  On April 26, 2009, Mr. Gasov's attorney, Zachary Berman, contacted

25  craigslist, through its attorneys, and requested a thirty day extension to prepare a responsive

26  pleading.  Declaration of Nicholas Manheim ("Manheim Decl.") ¶ 3.  craigslist granted

27  Mr. Gasov's request and set the due date for Mr. Gasov's responsive pleading as May 21, 2009.

28  *Id.* ¶ 4.

1    On April 30, 2009, the Court denied Mr. Berman's request to appear before this court

2    because he was not an active member of the California Bar.  DE 27.  The Court, however, stated

3    that it would allow Mr. Berman to appear on behalf of Gasov provided that he file a statement

4    that he was sponsored by or associated with co-counsel who was an active member in good

5    standing of the Bar of this court.  *Id.*  Mr. Berman has not submitted the required statement.

6    On May 18, 2009, three days before Mr. Gasov's responsive pleading was due,

7    Mr. Berman requested an additional extension for filing a responsive pleading until June 1, 2009,

8    and craigslist again granted his request.  Manheim Decl. ¶ 5.  Defendant Gasov failed to file a

9    responsive pleading on June 1, 2009, and craigslist requested entry of default against Gasov on

10   June 5, 2009.  DE 36.  The clerk granted craigslist's request on June 12, 2009.  DE 40.

11   craigslist now moves for an entry of default judgment pursuant to Rule 55 of the Federal

12   Rules of Civil Procedure.  craigslist requests that the Court enter default judgment against

13   Defendants on all causes of action, issue a permanent injunction against Defendants to prevent

14   future infringements and violations of craigslist's rights, award damages to craigslist, and award

15   attorneys' fees and costs to craigslist.

16                              **II.    FACTUAL BACKGROUND**

17   **A.    CRAIGSLIST'S WEBSITE AND TOUs**

18   craigslist owns and operates the website www.craigslist.org, which is an Internet-based

19   local classified ad service.  Compl. ¶ 2; FAC ¶ 2.  craigslist has registered copyrights in the

20   website, including the website's account creation and ad posting pages.  Compl. ¶¶ 62-69; FAC

21   ¶¶ 63-70.  craigslist has also registered the CRAIGSLIST mark.  Compl. ¶¶ 70-77; FAC ¶¶ 71-78.

22   Access to and use of the craigslist website and services are governed by Terms of Use

23   ("TOUs").  Compl. ¶¶ 10, 11, 32-36; FAC ¶¶ 10, 11, 33-37.  The TOUs are posted on the website,

24   and craigslist users cannot post ads or create accounts on the craigslist website without first

25   agreeing to the TOUs.  Compl. ¶¶ 32-36; FAC ¶¶ 33-37.

26   The TOUs protect craigslist users and preserve the simplicity, ease of use, and fairness

27   that are foundations of craigslist's website and services.  The TOUs prohibit "posting ads on

28   behalf of others" and prohibit the use of "any form of automated device or computer program that

1    enables the submission of postings on craigslist without each posting being manually entered by

2    the author thereof (an 'automated posting device'), including, without limitation, the use of any

3    such automated posting device to submit postings in bulk." Compl. ¶ 35; FAC ¶ 36.  The TOUs

4    also prohibit attempts "to gain unauthorized access to craigslist's computer systems."  Compl.

5    ¶ 35; FAC ¶ 36.

6    **B.    CRAIGSLIST SECURITY MEASURES**

7        craigslist employs a number of technological security measures to protect its website and

8    services, including the Complete Automated Public Turing test to tell Computers and Humans

9    Apart ("CAPTCHA") and telephone verification.  Compl. ¶¶ 49-61; FAC ¶¶ 50-62.

10       craigslist employs CAPTCHAs to ensure that user accounts and user ads are created and

11   posted manually (as required by the TOUs) and not by automated means.  Compl. ¶¶ 53, 54; FAC

12   ¶¶ 54, 55.  When a user creates an account or posts an ad, the user is presented with a webpage

13   displaying a challenge-response test that appears in the form of a box containing partially

14   obscured characters that the user must type into a designated box—this is the CAPTCHA.

15   Compl. ¶ 54; FAC ¶ 55.  If the CAPTCHA is not timely solved, the post or creation of an account

16   on craigslist cannot be completed.  Compl. ¶ 56; FAC ¶ 57.

17       craigslist employs telephone verification in certain categories, including erotic services, to

18   prevent automated, repetitive, unauthorized, unlawful, and abusive postings.  Compl. ¶¶ 57-58;

19   FAC ¶¶ 58-59.  When telephone verification is mandated, craigslist requires the user to enter a

20   valid telephone number in a specified box on the craigslist website.  Compl. ¶ 59; FAC ¶ 60.

21   craigslist then sends a temporary passcode to that telephone number, and the user must enter the

22   temporary password on the craigslist website.  Compl. ¶ 59; FAC ¶ 60.  Once a telephone number

23   has been verified, it may be used to post ads to craigslist.  Compl. ¶ 59; FAC ¶ 60  craigslist

24   periodically requires re-verification of these accounts.  Compl. ¶ 59; FAC ¶ 60.  If the telephone

25   number is not verified, the post cannot be completed.  Compl. ¶ 60; FAC ¶ 61.

26

27

28

C.     **DEFENDANTS' ABUSE, INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES, AND RIGHTS**

   1.     **Defendants' Products and Services That Violate craigslist's Website, Services, and Rights**

Defendants, operating the website and business www.powerpostings.com, developed, advertised, and sold software to automate posting ads on craigslist, services to post ads for customers, programs to gather craigslist user email addresses from the craigslist website, and systems to circumvent craigslist's security measures—in violation of the TOUs, craigslist's intellectual property rights, and other rights under the law.  Defendants have claimed that powerpostings.com "contains the largest single collection of classified ads marketing tools and information online."  Declaration of David Weeks ("Weeks Decl.") ¶ 3(a), Ex. 1.  They boast serving a large clientele and providing "helpful online support [and] practical advice on . . . automated posting tools [from] a panel of experts who have answered more than 1,400 questions from [customers]."  *Id.*

As explained by Defendants, their software "CraigsList AutoPoster Professional" allows customers to "automate [their] personal and business advertising" and "makes the difficult Craigslist posting process child's play and helps you manage and multi-post your ads."  Compl. ¶ 86; FAC ¶ 87; Weeks Decl. ¶ 3(b), Ex. 2.  In other words, "CraigsList AutoPoster Professional" allows users to post ads automatically to craigslist in whatever quantity and frequency the user wishes, even though such activity is expressly prohibited by craigslist and exceeds the limited license granted by craigslist to its users.  *See Id*.

Defendants also sold "Craigslist Posting Service," which Defendants advertised as follows:

> Trying to promote your business? Looking to market on Craigslist? We offer you a professional and reliable craigslist advertisement posting service. Posting can be frustrating and if you don't know how to do it, it can consume your valuable time. Let us help you post so you can focus on running your business. It doesn't cost a lot to reach millions of people. We can post your ad every day in any city.

Compl. ¶¶ 93-95; FAC ¶¶ 94-96; Weeks Decl. ¶ 3(c), Ex. 3.  Through this service, Defendants posted ads on the craigslist website for its customers and advertised and sold these services in

CASE NO. CV 08 5065 PJH
MOTION FOR DEFAULT JUDGMENT

1   packages of $50 for five posts per day for one week, $125 for fifteen posts per day for one week,

2   and $175 for twenty-five posts per day for one week.  Compl. ¶ 95; FAC ¶ 96; Weeks Decl.

3   ¶ 3(c), Ex. 3.

4        Furthermore, Defendants developed, advertised, and sold nefarious software to

5   impermissibly scrape email addresses from craigslist to later use to spam craigslist users.

6   According to Defendants, "Craigslist Top Secret Pro" pulls "The 'Real' emails of Auto poster

7   [and] manual posters."  Compl. ¶ 88; FAC ¶ 89.  The software allows spammers to "Grab

8   *Responsive* Lists from **8** Categories and **99** subcategories of posters." (emphasis in the original).

9   Weeks Decl. ¶ 3(d), Ex. 4.  Defendants claim that the software provided customers with the email

10  addresses of "thousands of fresh posters daily from Craigslist."  *Id.*

11       Defendants' "Craigslist Add [sic] Confirmer and Flagger" allowed users to remove the ads

12  of other craigslist users.  Compl. ¶ 89; FAC ¶ 90.  According to Defendants, this software

13  "Automatically Removes Spam Ad's [sic] On Craigslist and Confirme [sic] Youre [sic] Ad's [sic]

14  Automatcly [sic]."  Weeks Decl. ¶ 3(e), Ex. 5.

15       In the course of developing, testing, and using their products and services, Defendants

16  created copies of craigslist's copyrighted website in violation of the TOUs and craigslist's limited

17  license.  Compl. ¶¶ 96-104; FAC ¶¶ 97-105.  When developing their posting service, automated

18  posting software, and other programs, Defendants visited craigslist's website and copied the

19  website on their computers, such as on their computers' cached memory.  Compl. ¶ 96; FAC ¶ 97.

20  Because they made these copies while acting as a posting agent, automatically posting ads, or

21  participating in some other harmful activity, Defendants made these copies in violation of

22  craigslist's TOUs and its license.  Compl. ¶ 97; FAC ¶ 98.  Defendants therefore copied

23  craigslist's copyright-protected material outside the scope of the TOUs and the limited license and

24  without authorization.  Compl. ¶ 99; FAC ¶ 100.

25      **2.**    **Defendants' Devices for Circumventing craigslist's Security Measures**

26       Defendants also developed, advertised, and sold products and services that enable users to

27  circumvent craigslist's technological security measures and to access parts of the copyright-

28  protected craigslist website without authorization.  *See* Compl. ¶¶ 49-61, 85-104, 133-142; FAC

1   ¶¶ 50-62, 86-105, 134-143.  Defendants' "CraigsList AutoPoster Professional" includes an

2   "Automatic CAPTCHA bypass" feature that allows Defendants and its customers to circumvent

3   the CAPTCHA security measure.  *See* Compl. ¶ 86; FAC ¶ 87.

4          Defendants also sold "Phone Verified Craigslist Accounts."  Compl. ¶ 90; FAC ¶ 91.

5   Defendants touted that the craigslist accounts they sold are all phone verified, created with a

6   unique phone number and IP address, and ready to use.  Compl. ¶ 91; FAC ¶ 92.  Defendants

7   advertised as follows: "We offer 10 phone verified Craigslist accounts $7.99 per account and as

8   always [sic] set up specially for you! Each account has been created with a unique IP, unique

9   E-Mail address & phone number."  Compl. ¶ 92; FAC ¶ 93; Weeks Decl. ¶ 3(f), Ex. 6.

10  Defendants offered to sell packages of five phone verified accounts for $9.00 per account, ten

11  accounts for $7.99 per account, twenty-five accounts for $7.00 an account, fifty accounts for

12  $6.50 per account, and 100 "Phone Verified Craigslist Accounts" for $4.50 per account.  *Id*.

13  Defendants' phone verified accounts allow Defendants and their customers to circumvent

14  craigslist's security measures and access and copy copyright-protected parts of the craigslist

15  website without authorization.

16         **3.     Defendants' Unauthorized Use of the CRAIGSLIST Mark**

17         Furthermore, Defendants used the famous CRAIGSLIST mark in commerce without

18  authorization in paid sponsored link advertisements on the Google search engine:

19             < CraigList VP Accounts >
               Ultimate Craigls Tactical Advantage
20             2008 Best Marketing Tools Pro
               www.PowerPostings.com
21
               Reliable Posting Service
22             Best Selling Craiglist Autoposter
               Automated Campaign Manager Pro2008
23             www.PowerPostings.com

24             < Craiglist Software >
               Largest Single Collection of Market
25             Tools & Info Online Classifieds Ads
               www.PowerPostings.com
26
    Compl. ¶¶ 105-111, 164-176; FAC ¶¶ 106-112, 165-177; Weeks Decl. ¶ 3(g), Ex. 7.  Defendants
27
    did so deliberately to confuse consumers as to an affiliation, association, sponsorship or
28

1  endorsement of Defendants' products and services by craigslist where there was none.  Compl.

2  ¶¶ 108-111; FAC ¶¶ 109-112.

3        Defendants have been developing and selling their software, and visiting craigslist's

4  website for some time.  According to Defendants, they have "continually tested and updated [their

5  software] for over two years."  Weeks Decl. ¶ 3(b), Ex. 2.  Defendants explained that, in that

6  time, their software was "meticulously maintained and tweaked by a small group of award-

7  winning programmers."  *Id.*  Each time Defendants visited the craigslist website to test their

8  infringing software, Defendants violated craigslist's TOUs and its legal rights.  Defendants'

9  continual activity over two years has harmed craigslist's systems and its relationship with

10  legitimate users, and it has caused craigslist to expend considerable resources to investigate,

11  remove, and counter its unauthorized and illegal activity.  Compl. ¶¶ 112-120; FAC ¶¶ 113-121.

12  Moreover, Defendants' products likely continue to harm the craigslist website and damage

13  craigslist's good will with legitimate craigslist users.

14  **D.     DEFENDANTS ARE UNJUSTLY ENRICHED BY THEIR ABUSE,
        INFRINGEMENT, AND VIOLATION OF CRAIGSLIST'S WEBSITE, SERVICES,**
15  **AND RIGHTS**

16        Defendants' refusal to participate in this litigation has significantly disadvantaged

17  craigslists' ability to put forward evidence of the full extent of Defendants' conduct and the full

18  scope of Defendants' gains at craigslist's expense.  However, the evidence available to craigslist at

19  this time shows that Defendants profited handsomely from their illegal endeavors.  Their website

20  indicates the extent of their operation as they admit to developing their software and services "for

21  over two years" and admit that they had a vast clientele providing their "panel of experts" with

22  "more than 1,400 questions."  Weeks Decl. ¶ 3(a) and (b), Ex. 1 and 2.  Moreover, in informal

23  discussions, Defendants stated that they grossed approximately $40,000 from the operation of

24  powerpostings.com.[1]  Manheim Decl. ¶ 6.

25  _____

26  [1] This financial information, provided to craigslist by Defendants in preliminary discussions of
potential resolution, Manheim Decl. ¶ 6, are independently discoverable and admissible before the Court.
27  *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008) ("evidence, such
as documents, is not rendered inadmissible merely because it is presented in the course of compromise
negotiations if the evidence is otherwise discoverable.  A party should not be able to immunize from
28  admissibility documents otherwise discoverable merely by offering them in a compromise negotiation.")

**E.    MEANWHILE CRAIGSLIST IS SUFFERING MONETARY AND INTANGIBLE INJURIES FROM DEFENDANTS' ACTIONS**

craigslist has unquestionably suffered and continues to suffer the financial burdens related to the increased equipment, bandwidth, and personnel required to accommodate the innumerable unauthorized posts for which Defendants are responsible.  Compl. ¶¶ 112-120; FAC ¶¶ 113-121.

craigslist also has suffered and is suffering harm to its reputation and goodwill as a result of Defendants' disruption of the proper functioning of the website and services for legitimate users.  Compl. ¶¶ 116-117; FAC ¶¶ 117-118.  Defendants encourage and enable craigslist users to violate craigslist's TOUs, copyrights, contracts, and other legal rights, as a result of which the users may be banned from craigslist.  Compl. ¶¶ 112-120, 191-207; FAC ¶¶ 113-121, 192-208.  Moreover, Defendants' auto-posting and circumvention systems enable its customers to unfairly compete against legitimate users in craigslist marketplaces.  Compl. ¶¶ 81, 82; FAC ¶¶ 82, 83.  craigslist is founded on fairness and simplicity in its operation.  Compl. ¶¶ 5, 9; FAC ¶¶ 5, 9.  When Defendants disrupt these pillars, craigslist no longer operates like it should, and users become frustrated.  Compl. ¶ 117; FAC ¶ 118; Weeks Decl. ¶ 3(h), Ex. 8.  Many legitimate craigslist users blame craigslist for this interference with the fair and efficient operation of the services.  *Id.* .  Some users even suspect craigslist of profiting from the abusive auto-posting activity.  *Id.*

## III.    DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise," default judgment may be entered.  Fed. R. Civ. P. 55(a) .  After a defendant's default is entered by the court, the well-pled factual allegations of the complaint are taken as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *see also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007), citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995) (holding that once a default is entered against a defendant, "that party is deemed to have

(citing Fed. R. Evid. 408, advisory committee's note); *see also Atari v. Sega of Am.*, 161 F.R.D. 417, 419 (N.D. Cal. 1994) (finding discoverable evidence exchanged during a compromise meeting admissible).

1  admitted all of the well pleaded allegations in the complaint").  Where the factual allegations of

2  the complaint provide a sufficient legal basis for entry of a default judgment, the court then

3  conducts an inquiry to ascertain the amount of damages.  *See Sony Computer Entm't Am., Inc. v.*

4  *Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal. 2006); *see also Arista Records, Inc. v. Beker Ent.,*

5  *Inc.*, 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003).

6  **A.     CRAIGSLIST IS ENTITLED TO DEFAULT JUDGMENT**

7       The Ninth Circuit has enumerated the following factors for a district court to consider

8  when determining whether to grant default judgment:

9          (1) the possibility of prejudice to the plaintiff, (2) the merits of
           plaintiff's substantive claim, (3) the sufficiency of the complaint,
10         (4) the sum of money at stake in the action, (5) the possibility of a
           dispute concerning material facts, (6) whether the default was due
11         to excusable neglect, and (7) the strong policy underlying the
           Federal Rules of Civil Procedure favoring decisions on the merits.
12
   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *Adobe Systems, Inc. v. Taveira*, 2009
13
   WL 506861 (N.D. Cal. 2009) (upon motion for default judgment, awarded permanent injunction
14
   and $250,000 for violation of five trademarks).  "In applying this discretionary standard, default
15
   judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431,
16
   432 (C.D. Cal. 1999).  In this case, the enumerated factors weigh heavily in favor of granting
17
   default judgment and awarding craigslist injunctive and monetary relief.[2]
18
   **1.     Prejudice to craigslist**
19
        As to factor one, craigslist would unquestionably suffer prejudice if the default judgment
20
   is not entered because craigslist would be without recourse to prevent Defendants from infringing
21
   craigslist's rights in the future and without recourse to recover for the harm and damages
22

23       [2] As alleged in the Complaint and FAC, this Court has jurisdiction over craigslist's claims.  First,
   the Court has jurisdiction under the Ninth Circuit standard for personal jurisdiction.  Defendants availed
24   themselves of California by selling products on-line that were available to California residents; they
   knowingly infringed the trademarks and copyrights of a California based company; and the Court's
25   jurisdiction is reasonable.  *See Cybersell v. Cybersell*, 130 F.3d 414, 419 (9th Cir. 1997), *Stomp, Inc. v.
   NeatO, LLC*, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999), *Columbia Pictures Television v. Krypton
26   Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on other grounds Feltner v.
   Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 (1998), *Haisten v. Grass Valley Medical
27   Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986).  Second, the Court has jurisdiction because
   Defendants agreed to craigslist's TOUs, which identify California as the appropriate forum for this suit.
28   *See* Compl. ¶ 17, 36; FAC ¶ 18, 37, Ex. A (TOU) ¶ 18; *see also Zenger-Miller, Inc. v. Training Team,
   GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991).

1    Defendants have caused craigslist already.  *See PepsiCo v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172,

2    1177 (C.D. Cal. 2002) ("[p]otential prejudice to [plaintiff] favors granting a default judgment.").

3           **2.      Merits of the Substantive Claims and Sufficiency of the Complaint**

4           *Eitel* factors two and three (merits of plaintiff's substantive claim and sufficiency of the

5    complaint) simply "require that a plaintiff state a claim on which [it] may recover." *Cal. Sec.*

6    *Cans.*, 238 F. Supp. 2d at 1175 (citations and quotations omitted); *see also Philip Morris USA*

7    *Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  craigslist's FAC and

8    Complaint provide detailed factual allegations as to the elements of each cause of action asserted,

9    *see* Compl. ¶¶ 121-219; FAC ¶¶ 122-220, and state a claim as to all of them.

10          **a.      Copyright Infringement, 17 U.S.C. § 101, *et seq.***

11          To demonstrate copyright infringement, a plaintiff need only show:  (1) ownership of a

12   valid copyright; and (2) copying of original elements of the work.  *Feist Publications, Inc. v.*

13   *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

14          craigslist's website is a work of authorship protected by craigslist's registered copyrights.

15   Compl. ¶¶ 62-69; FAC ¶¶ 63-70.  craigslist grants visitors to the website a limited license to

16   access and use (including copying as necessary) the website for the purposes and subject to the

17   restrictions in the TOUs.  Compl. ¶¶ 32-36; FAC ¶¶ 33-37.  Defendants assented to the TOUs

18   when they accessed and used the website.  Compl. ¶¶ 43-47, 100-101; FAC ¶¶ 44-48, 101-102.

19   Defendants' access to and use of the craigslist website violated the TOUs and the limited license

20   granted by the TOUs, and was therefore unauthorized.  Compl. ¶¶ 32-36, 80, 96-99; FAC ¶¶ 33-

21   37, 81, 97-100.  The cached copies of the website created by Defendants on their own computers

22   in their unauthorized endeavors were therefore also unauthorized, and infringed craigslist's

23   copyrights in its website.  *See Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d

24   1096 (C.D. Cal. 2007) (holding plaintiff strongly likely to succeed on claim that creation of

25   cached copies of web pages on defendant's computer during use of website in violation of

26   website's terms of use and limited license was copyright infringement).

27          In addition, a defendant is contributorily liable for copyright infringement if he knowingly

28   induces, causes, or materially contributes to the infringing conduct of another.  *Ellison v.*

1    *Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Here, the Complaint and FAC plainly establish

2    that Defendants intentionally induced, encouraged, caused, or materially contributed to their

3    customers' infringements of craigslist's website by marketing, distributing, updating, and

4    maintaining software and services so the customers could access and auto-post ads to craigslist in

5    violation of the limited license granted to them by craigslist's TOUs.  Compl. ¶¶ 78-84, 103-104,

6    121-132; FAC ¶¶ 79-85, 104-105, 122-133.

7                **b.**     **Digital Millennium Copyright Act Violation, 17 U.S.C. § 1201, *et seq.***

8              As explained in the Complaint and FAC, craigslist users *must* solve the CAPTCHA and,

9    in some categories, provide telephone verification before they are able to access copyright-

10   protected portions of the craigslist website for posting content and creating accounts.  Compl.

11   ¶¶ 53-60; FAC ¶¶ 54-61.  Hence, the powerpostings.com software, CAPTCHA service, and

12   telephone verified account products Defendants manufacture, market, and distribute to

13   circumvent the CAPTCHA and phone verification security measures enable users' unauthorized

14   access to posting and account creation portions of the craigslist website that they could not

15   otherwise access.  Compl. ¶¶ 85-95, 133-142; FAC ¶¶ 86-96, 134-143.  Indeed, these products

16   and services were designed and produced primarily to circumvent craigslist's CAPTCHA and

17   telephone verification security measures in order to enable users to access and copy portions of

18   the website that they otherwise could not; they have no commercially significant purpose or use

19   other than to circumvent these security measures; and they are marketed by Defendants for use in

20   circumventing craigslist's CAPTCHA and telephone verification measures.  Compl. ¶¶ 49-61, 90-

21   92; FAC ¶¶ 50-62, 86, 91-93.  The Complaint and FAC thus state a claim for violation of the

22   DMCA, specifically 17 U.S.C. § 1201(a)(2) and § 1201(b)(1).  *See Ticketmaster*, 507 F. Supp. 2d

23   at 1111-12 (holding plaintiff likely to prevail on claims that software circumventing a CAPTCHA

24   security measure violated 17 U.S.C. § 1201(a)(2)  and (b)(1) ); *see also Chamberlain Group v.*

25   *Skylink Technologies, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).

26               **c.**     **Computer Fraud and Abuse Act Violation, 18 U.S.C. § 1030**

27             Defendants also violated the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.

28   § 1030, which provides for criminal penalties as well as civil liability.  Defendants violated the

1    statute when they intentionally accessed craigslist's computers (involved in interstate commerce)

2    to develop, implement, update, and support their auto-posting programs and services and their

3    email scraping software in violation of the TOUs, making their access unauthorized.  Compl.

4    ¶¶ 96-102, 143-150; FAC ¶¶ 97-103, 144-151; *see Ticketmaster*, 507 F. Supp. 2d at 1113

5    (holding plaintiff likely to be able to prove CFAA violation for automated device that enabled

6    users to access and navigate Internet ticketing website).  Defendants caused substantial losses and

7    damage to craigslist.  *See supra*, Part II E.  The amount of these losses and damages well exceed

8    $5,000.  Compl. ¶ 114; FAC ¶ 115.

9                   **d.     Cal. Pen. Code § 502 Violation**

10              With respect to the California unauthorized computer access claim, California Penal Code

11   § 502, the Complaint and FAC establish that Defendants accessed the craigslist website in

12   contravention of the craigslist TOUs to obtain information and develop, update, operate, and

13   maintain its auto-posting software and services, which harmed craigslist (as summarized above).

14   Compl. ¶¶ 96-102; FAC ¶¶ 97-103.  This is sufficient to find violations of California Penal Code

15   § 502, in particular of California Penal Code § 502(c)(1)[3], § 502(c)(2)[4], § 502(c)(6)[5], and

16   § 502(c)(7)[6].  Compl. ¶¶ 151-163; FAC ¶¶ 152-164; *see Facebook, Inc. v. ConnectU LLC*, 489 F.

17   Supp. 2d 1087, 1091 (N.D. Cal. 2007) (denying motion to dismiss where "the FAC alleges facts

18   showing that ConnectU knowingly accessed Facebook's website to collect, copy, and use data

19   found thereon in a manner not authorized or permitted by Facebook").

20

21
    _____

22       [3] Under California Penal Code § 502(c)(1), it is a public crime when anyone "[k]nowingly
    accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer,
    computer system, or computer network in order to either (A) devise or execute any scheme or artifice to
23   defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."
         [4] Under California Penal Code § 502(c)(2), it is a public crime when anyone "[k]nowingly
24   accesses and without permission takes, copies, or makes use of any data from a computer, computer
    system, or computer network, or takes or copies any supporting documentation, whether existing or
25   residing internal or external to a computer, computer system, or computer network."
         [5] Under California Penal Code § 502(c)(6), it is a public crime when anyone "[k]nowingly and
26   without permission provides or assists in providing a means of accessing a computer, computer system, or
    computer network in violation of this section."
27       [6] Under California Penal Code § 502(c)(7), it is a public crime when anyone "[k]nowingly and
    without permission accesses or causes to be accessed any computer, computer system, or computer
28   network."

e.      **Federal Trademark Infringement, 15 U.S.C. §§ 1114, 1125(a)**

The Complaint and FAC state a claim for violation of the Lanham Act.  craigslist owns four registrations in the CRAIGSLIST mark.  Compl. ¶¶ 70-77; FAC ¶¶ 71-78.  Defendants have used the CRAIGSLIST mark in sponsored link advertisements without authorization to profit from craigslist's goodwill and reputation.  Compl. ¶¶ 105-111; FAC ¶¶ 106-112; Weeks Decl. ¶ 3(g), Ex. 7.  Defendants' use of the mark in the bold header of the sponsored link, declaring "Craiglist [sic] Software," and in the text, declaring "Best Selling Craiglist [sic] Autoposter," creates a substantial likelihood that users will be confused as to whether powerpostings.com's products and services are associated, affiliated, connected with, sponsored by, or endorsed by craigslist (at minimum, as a matter of initial interest confusion).  Compl. ¶¶ 106-108; FAC ¶¶ 107-109; *Google Inc. v. American Blind & Wallpaper*, No. C 03-5340 JF, 2007 WL 1159950, at **6-9 (N.D. Cal. April 18, 2008) (finding that sponsored links cause initial consumer confusion, allowing the competitor to gain "a customer by appropriating the goodwill that [plaintiff] has developed in its mark.") (citing *Playboy Enter., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004)).

f.      **California Common Law Trademark Infringement**

The Complaint and FAC state a claim for trademark infringement under California common law.  *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal. 2005).  As alleged in the Complaint and FAC, craigslist owns common law rights in the CRAIGSLIST mark, Compl. ¶ 174; FAC ¶ 175, and these rights have been infringed by Defendants' actions as described above.  Compl. ¶¶ 173-176; FAC ¶¶ 174-177.

g.      **Breach of Contract**

The Complaint and FAC state a claim for breach of contract.  *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (Cal. App. 1990).  The TOUs were the contract; Defendants breached them, including sections 7(x) (unauthorized access to computers and disruptive activity), 7(y) (using any automated device or computer program to enter postings), and 8 (posting ads as a posting agent); and craigslist suffered harm.  Compl. ¶¶ 32-36, 43, 47, 96-102, 112-120, 177-190; FAC ¶¶ 33-37, 44, 48, 97-103, 113-121, 178-191; *see*

1   *Molnar v. 1-800-Flowers.com, Inc.*, No. 08-Cv-0542, 2008 WL 4772125, at *7 (C.D. Cal.

2   Sept. 29, 2008) (denying motion to dismiss breach of contract claim because "courts have held

3   that a party's use of a website may be sufficient to give rise to an inference of assent to the Terms

4   of Use contained therein"); *Ticketmaster,* 507 F. Supp. 2d at 1107 (granting preliminary

5   injunction for breach of contract claim based on use of website outside the terms of use).

6           **h.      Inducing Breach of Contract and Intentional Interference with
                       Contractual Relations**

7           The Complaint and FAC state claims for inducing breach of contract and intentional

8   interference with contractual relations.  *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d

9   1195, 1205 (N.D. Cal. 2004); *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122-23 (Cal. Ct. App.

10  1985).  The Complaint and FAC identify the TOUs as valid and existing contracts between

11  craigslist and craigslist users, Compl. ¶¶ 32-36, 192-194; FAC ¶¶ 33-47, 193-195, and explain

12  Defendants' knowledge of the TOUs and Defendants' intent and intentional acts to breach or

13  disrupt the contractual relationship between craigslist and its users by inducing users to autopost

14  ads, to use Defendants' posting agent services, to scrape craigslist user email addresses, to

15  circumvent CAPTCHAs, and to bypass telephone verification (and thus also access the website

16  and craigslist computers without authorization).  Compl. ¶¶ 103, 191-199; FAC ¶¶ 104, 192-200.

17  The Complaint and FAC also allege actual breach or disruption of the TOU contracts when users

18  were induced by Defendants to autopost ads, to use Defendants' posting agent services, to scrape

19  craigslist user email addresses, to circumvent CAPTCHAs, and to bypass telephone verification

20  in violation of the TOUs.  Compl. ¶¶ 104, 200-205; FAC ¶¶ 105, 201-206.  And the Complaint

21  and FAC allege resulting harm and damage to craigslist.  Compl. ¶¶ 112-120, 197, 205; FAC

22  ¶¶ 113-121, 198, 206.

23          **i.      Fraud**

24          "Under California law, the indispensable elements of a fraud claim include a false

25  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

26  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotation and citation

27  omitted).  The Complaint and FAC establish each element with particularity.

28

40753-0043/LEGAL16387156.1                        -15-                CASE NO. CV 08 5065 PJH
                                                                      MOTION FOR DEFAULT JUDGMENT

The Complaint and FAC allege false representations and the contents of and parties to the false representations—Defendants' statements to craigslist that they would comply with the TOUs when they had no intention of complying and did not comply.  Compl. ¶¶ 100-101, 209-211; FAC ¶¶ 101-102, 210-212.  The Complaint and FAC also allege the times and locations of the misrepresentations—they are each time Defendants assented to the TOUs on the craigslist website by clicking the "ACCEPT terms of use" option before creating a user account or posting content and by using the website.  Compl. ¶ 100; FAC ¶ 101.  The Complaint and FAC allege knowledge of the falsity—Defendants knew they had no intention of complying with the TOUs when they represented that they would abide by them.  Compl. ¶¶ 100-101, 215; FAC ¶¶ 101-102, 216.  The Complaint and FAC allege an intent to defraud—Defendants intended to gain unauthorized access to the craigslist website and services to develop, update, operate, and maintain their illicit auto-posting, posting service, email address scraping, and security circumvention systems.  Compl. ¶¶ 96-102, 214; FAC ¶¶ 97-103, 215.  The Complaint and FAC allege justifiable reliance—craigslist reasonably relied on Defendants' affirmative assent to the TOUs to grant access to the craigslist website and services.  Comp. ¶¶ 43, 47, 212; FAC ¶¶ 44, 48, 213.  And the Complaint and FAC allege damages—Defendants' fraud has resulted in the manufacture, updating, maintenance, and widespread distribution and use of Defendants' auto-posting, posting service, email address scraping, and circumvention systems, which has caused and is causing craigslist economic harm to address and combat as well as intangible reputational harm with legitimate craigslist users.  Compl. ¶¶ 112-120, 217; FAC ¶¶ 113-121, 218.

**j.  Defendants' Violations Were Knowing, Deliberate, Intentional, Willful, and Undertaken with Conscious Disregard for craigslist's Rights**

Defendants' actions giving rise to each claim pled in the Complaint and FAC were undertaken knowingly, deliberately, intentionally, willfully, and with conscious disregard for craigslist's rights (referred to collectively as "willfully" or "willfulness" below for simplicity).  The allegations of the Complaint and FAC, which are taken as true, establish this willfulness.  *See* Compl ¶¶ 100-102, 104, 111, 129, 145-147, 153-162, 170, 187, 193-194, 203, 215; FAC ¶¶ 101-103, 105, 112, 130, 146-148, 154-163, 171, 188, 194-195, 204, 216; *see also TeleVideo*, 826 F.2d

1    at 917.  Moreover, willfulness can be inferred from a defendant's failure to defend.  *Castworld*

2    *Prods.,* 219 F.R.D. at 500; *see Fallaci v. New Gazette Literacy Corp.*, 568 F. Supp. 1172, 1173

3    (S.D.N.Y. 1983); *Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (the court may infer willful

4    infringement because of default).

5            As alleged in the Complaint and FAC, Defendants set up craigslist accounts and posted

6    ads on craigslist in the course of their business.  Compl. ¶¶ 98-102; FAC ¶¶ 99-103.  To do this,

7    Defendants were asked if they agreed to the craigslist TOUs, which explicitly prohibit

8    Defendants' activities.  Compl. ¶ 100; FAC ¶ 101.  Knowing that craigslist's TOUs prohibited

9    their activity, that their activity was illegal, and that they were creating unauthorized copies of

10   craigslist's copyrighted material in developing and using their own products and services,

11   Defendants agreed to the TOUs and persisted in their illegal activity.  Compl. ¶¶ 98-102; FAC

12   ¶¶ 99-103.  Defendants therefore deliberately, willfully, and intentionally violated the law and

13   harmed craigslist.

14           Accordingly, the Court should find that Defendants' actions in violation of federal statutes,

15   state statutes, and the common law, as alleged in the Complaint and FAC, were knowing,

16   deliberate, intentional, willful, and undertaken with conscious and callous disregard for

17   craigslist's rights.  *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 878 (on default, court

18   looked to factual allegations in complaint and held that defendant willfully violated Copyright

19   Act and Lanham Act); *Divineo*, 457 F. Supp. 2d 957 (holding defendant in default and willfully

20   violated DMCA).

21           **3.      Sum of Money at Stake**

22           As for the fourth *Eitel* factor, the sum of money at stake is not inconsequential, and

23   neither is the harm caused by Defendants' knowing and deliberate abuse of craigslist.

24           **4.      The Possibility of Disputed Material Facts and Whether Default was Due to
                       Excusable Neglect**

25
            Pursuant to the fifth and sixth *Eitel* factors, there is virtually no possibility of a dispute as

26   to material facts or of excusable neglect for the default in this case.  *See Castworld Products*, 219

27   F.R.D. at 500-01.  The factual allegations of Complaint and FAC, now admitted, and the

28

1    supporting evidence provided in the declarations and exhibits with this motion show—with no

2    room for equivocation—that Defendants engaged in the acts alleged.

3         Service of the summons, Complaint, and FAC and Defendants' attempt to appear, multiple

4    requests for extensions to respond to the FAC, and efforts to resolve the case informally, show—

5    also without equivocation—that there is no excuse for Defendants' default.

6         **5.      Federal Rules of Civil Procedure Policy Favoring Decisions on the Merits**

7         As for the seventh *Eitel* factor (policy in favor of decisions on the merits), Defendants'

8    refusal, not mere failure, to appear, respond, or otherwise defend against craigslist's Complaint

9    and FAC makes a resolution on the merits impossible. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177

10   ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed

11   whenever a defendant fails to defend an action.").

12        Pursuant to *Eitel*, craigslist is entitled to default judgment against Defendants establishing

13   liability on all claims.

14   **B.      CRAIGSLIST IS ENTITLED TO APPROPRIATE RELIEF**

15        With default judgment justified, the Court next conducts an inquiry into appropriate relief,

16   including the amount of damages. *See, e.g.*, *3A Entm't Ltd. v. Constant Entm't, Inc.*, No. C 08-

17   01274 JW, 2009 WL 248261, at *6 (N.D. Cal. Jan. 30, 2009). craigslist seeks both injunctive and

18   monetary relief.

19        **1.      Injunctive Relief Is Appropriate and Necessary**

20        craigslist is entitled to request injunctive relief pursuant to Defendants' liability for

21   copyright infringement, 17 U.S.C. § 502(a); violation of the DMCA, 17 U.S.C. § 1203; violation

22   of the CFAA, 18 U.S.C. § 1030(g); violation of the California Penal Code § 502, Cal. Pen. Code

23   § 502(e); Federal Trademark Infringement, 15 U.S.C. § 1116; and common law breach of

24   contract, inducing breach of contract, intentional interference with contractual relations, and

25   fraud.

26        The Court's power to grant a permanent injunction against Defendants is therefore broad.

27   For example, the Court may "grant temporary and final injunctions on such terms as it may deem

28   reasonable to prevent or refrain from infringement of a copyright." 17 U.S.C. § 502(a). The

1   DMCA also provides grounds for the Court to award any reasonable injunctive relief to prevent

2   or restrain violations of its anti-circumvention provisions.  17 U.S.C. § 1203(b)(1); *see Universal*

3   *City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000).  The Lanham Act

4   allows the Court to issue any reasonable permanent injunction to prevent any future violations of

5   craigslist's trademarks.  15 U.S.C. § 1116(a).  Indeed, courts "regularly issue injunctions as part of

6   default judgments."  *Arista Records*, 298 F. Supp. 2d at 1314; *see also Castworld Prods.*, 219

7   F.D.R. at 502; *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1011 (N.D. Cal. 2003).

8          Defendants developed and sold programs that violate craigslist's copyrights and

9   trademarks, and developed and sold programs and services specifically designed to circumvent

10  craigslist's security measures.  Compl. ¶¶ 85-111; FAC ¶¶ 86-112.  Defendants engaged in such

11  conduct despite being fully aware that it infringed craigslist's TOUs and legal rights.  Compl.

12  ¶¶ 96-102; FAC ¶¶ 97-103.  Defendants' conduct has damaged craigslist, and caused and

13  continues to cause irreparable and incalculable harms and injury to craigslist.  Compl. ¶¶ 112-

14  120; FAC ¶¶ 113-121.  As explained in the Complaint and FAC, hard costs to craigslist from

15  Defendants' auto-posting programs and circumvention systems are substantial and mounting as

16  craigslist endeavors to meet the increased burdens on its equipment and personnel.  Compl.

17  ¶¶ 114-115; FAC ¶¶ 115-116.  Moreover, craigslist believes Defendants' nefarious products

18  continue to be used, and as a result, craigslist is suffering lost reputation and goodwill and lost

19  users as frustration with the impacts of autoposting products, such as Defendants', grows and

20  craigslist struggles to stop them.  Compl. ¶¶ 116-117; FAC ¶¶ 117-118.

21         craigslist therefore requests that the Court enter a permanent injunction as set forth in the

22  Complaint and FAC's Prayer for Relief § 1 and as included in the Proposed Order filed with this

23  Motion.

24     **2.      Monetary Damages Are Also Appropriate and Necessary**

25         craigslist is entitled to monetary relief pursuant to Defendants' liability on each of the

26  causes of action.  Under all of the claims, craigslist may seek actual compensatory damages.

27  17 U.S.C. § 504; 17 U.S.C. § 1203(c); 18 U.S.C. § 1030(g); Cal. Penal Code § 502(e); 15 U.S.C.

28  § 1117(a); Cal. Civ. Code § 3300; Cal. Civ. Code § 1709.  Under the breach of contract claim,

1  craigslist may seek liquidated damages. Cal. Civ. Code § 1671. For Defendants' copyright,

2  DMCA, and federal trademark violations, craigslist may also seek Defendants' profits from their

3  unlawful activity and unjust enrichment (to the extent they are not encompassed in actual

4  damages). 17 U.S.C. § 504(b); 17 U.S.C. § 1203(c)(2); 15 U.S.C § 1117(a). For Defendants'

5  violations of the DMCA, craigslist may elect statutory damages as an alternative to actual

6  damages and Defendants' profits. 17 U.S.C. § 1203(c)(3). Pursuant to craigslist's California

7  Penal Code § 502, inducing breach of contract, intentional interference with contractual relations,

8  and fraud claims, because Defendants' conduct was undertaken with the intent to injure craigslist

9  and with willful and conscious disregard for craigslist's rights such that it constitutes clear and

10  convincing evidence of oppression, fraud, and malice (as alleged and taken as true from the

11  Complaint and FAC), craigslist may additionally seek punitive or exemplary damages in amounts

12  sufficient to deter Defendants from future misconduct. Compl. ¶¶ 132, 142, 163, 199, 207, 219;

13  FAC ¶¶ 133, 143, 164, 200, 208, 220; Cal. Penal Code § 502(e)(4); Cal. Civ. Code § 3294.

14  **a.    Defendants' Failure to Appear Impedes craigslist's Damages Case**

15  Although craigslist should be entitled to seek the various types of damages above,

16  Defendants' failure to respond to craigslist's Complaint and FAC and craigslist's subsequent

17  inability to pursue discovery has prejudiced craigslist's ability to prove all of its damages.

18  Nonetheless, in the interests of efficiency and finality, craigslist requests an award of (1) statutory

19  damages for Defendants' violations of the DMCA, (2) craigslist's actual damages for breach of

20  contract under the liquidated damages provisions of craigslist's TOUs, and (3) punitive or

21  exemplary damages available under state law claims in an amount sufficient to deter Defendants

22  from future misconduct.

23  **b.    Award of DMCA Statutory Damages**

24  The DMCA allows a successful plaintiff to elect to recover an award of statutory damages

25  in lieu of actual damages. *See* 17 U.S.C. § 1203(c)(3)(A). Statutory damages may be especially

26  fitting in default judgment cases because information needed to prove actual damages may be

27  within the defendant's control and not disclosed. *Microsoft Corp.*, 490 F. Supp. 2d at 882.

28

1    The DMCA authorizes statutory damages of between $200 and $2,500 per act of

2 circumvention, device, component, offer, or performance of service, 17 U.S.C. § 1203(c)(3)(A),

3 and courts have wide discretion to determine the appropriate level of statutory damages within

4 this range.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).  Here,

5 an award of statutory damages at the maximum end of the range is warranted by Defendants'

6 deliberate, flagrant, and callous disregard of craigslists' rights.  *See supra,* Parts III.A.2.j.

7 Moreover, Defendants have ignored this lawsuit and prevented craigslist from conducting

8 discovery to properly prosecute its case and prove all of its damages.  *See Sony Computer Entm't*

9 *Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) (holding that when the

10 defendant is responsible for "any uncertainty as to the exact amount sold . . . it is appropriate that

11 [the plaintiff] be awarded significant statutory damages").  Defendants should not benefit from

12 refusing to respond to craigslist's claims, and granting craigslist the maximum allowable statutory

13 damages under the law will deter such conduct again.

14    craigslist asks for application of this statutory damages amount for each "device" in which

15 Defendants trafficked or for each "offer" of a device made by Defendants.  Because Defendants

16 refused to participate in this litigation, craigslist is forced to make certain assumptions regarding

17 the number of devices and offers made.

18    Defendants advertised and sold "CraigsList AutoPoster Professional," which Defendants

19 state includes an "Automatic CAPTCHA bypass" feature allowing Defendants and its customers

20 to circumvent craigslist's CAPTCHA security measure.  Compl. ¶ 86; FAC ¶ 87; Weeks Decl.

21 ¶ 3(b), Ex. 2.  In addition, Defendants' offered and sold packages of up to 100 phone verification

22 circumvention devices.  Weeks Decl. ¶ 3(e), Ex. 5.  In informal discussions, Defendants stated

23 that they grossed roughly $40,000 from powerpostings.com.  *See* Manheim Decl. ¶ 6.  Assuming

24 Defendants sold only "Craigslist Autoposter Professional" at its advertised price of $84.95,

25 Defendants sold approximately 470 units of "Craigslist Autoposter Professional" with its

26 CAPTCHA circumvention feature.[7]  Defendants' willful and intentional violation of craigslist's

---

27    [7] In *Filipiak*, the defendant also failed to disclose the total number of devices he sold in violation
28 of the DMCA.  406 F. Supp. 2d at 1073 (N.D. Cal. 2005).  The defendant had provided the gross income
 from his business, the percentage of his business dedicated to the sale of the DMCA violating devices, and

1   legal rights entitles craigslist to statutory damages of $2,500 per device sold, and craigslist

2   therefore requests $1,175,000.00 for Defendants' DMCA violations.

3         In the alternative, the DMCA provides statutory damages for each "offer" of a DMCA

4   violating device.  *See* 17 U.S.C. § 1203(c)(3)(A).  Defendants offered to sell "CraigsList

5   AutoPoster Professional" and its "Automatic CAPTCHA bypass" feature.  Compl. ¶ 86; FAC

6   ¶ 87; Weeks Decl. ¶ 3(b), Ex. 2.  Defendants' also offered packages of up to 100 phone

7   verification circumvention devices.  Weeks Decl. ¶ 3(e), Ex. 5.  Defendants therefore offered at

8   least 101 devices and made at least 101 offers to sell devices that circumvent the security

9   measures protecting craigslist's copyright protected website.  Applying statutory damages of

10   $2,500 per offer, craigslist would be entitled to a statutory damages award of $252,500.  *See*

11   *Divineo*, 457 F. Supp. 2d at 966 (calculating DMCA statutory damages by projecting the number

12   of devices sold in certain months based on prior sales).

13           **c.**    **Award of Actual Damages**

14         craigslist asks the Court for an award of its actual damages for breach of contract as

15   provided in the liquidated damages provisions of craigslist's TOUs.  The TOUs provide "If you

16   post Content in violation of the TOU . . . you agree to pay craigslist one hundred dollars ($100)

17   for each Item of Content posted."  Compl. Ex. A, 19(d).  Additionally, the TOUs provide that "[i]f

18   you are a Posting Agent that uses [craigslist] in violation of the TOU, in addition to any

19   liquidated damages under [the clause just quoted], you agree to pay craigslist one hundred dollars

20   ($100) for each and every Item you post in violation of the TOU."  Compl. Ex. A, 19(e).

21   Defendants acted as a "Posting Agent" by posting ads for their customers on craigslist's website

22   and therefore violated TOU paragraph 8.  Compl. ¶ 93; FAC ¶ 94.  Under the liquidated damages

23   the price per DMCA violating device.  *Id*.  The court calculated the total number of devices sold for the

24   purposes of calculating statutory damages under the DMCA by multiplying the gross income by the
percentage and dividing the product by the per unit price.  *Id*.  Here, we do not know the percentage of

25   Defendants' sales attributable to DMCA violating devices, but we do know Defendants' gross sales and the
prices of its products.  Defendants' gross sales are roughly $40,000, *see* Manheim Decl. ¶ 6, and

26   Defendants' DMCA violating devices, both its CAPTCHA circumvention devices and phone verification
devices, are both the most expensive and least expensive products Defendants sold.  By dividing

27   Defendants' gross sales by their most expensive DMCA violating device, craigslist is conservatively
estimating the number of devices Defendants sold in violation of the DMCA.  As the Northern District of
California has held previously, where Defendants are responsible for "any uncertainty as to the exact

28   amount sold . . . it is appropriate that [Plaintiff] be awarded significant statutory damages."  *Id*. at 1075.

1   provisions of the TOUs, which Defendants agreed to, craigslist is entitled to $200 for every ad

2   Defendants posted as posting agents.

3       Defendants' website provides evidence of the number of ads posted by Defendants as

4   posting agents.  Defendants advertised and offered to post customers' ads at a rate of 25 ads per

5   day for a week—a total package of 175 illegal ads per week.  Compl. ¶ 95; FAC ¶ 96; Weeks

6   Decl. ¶ 3(c), Ex. 3.  Defendants also advertised that they developed, sold, and updated their

7   products and services for two years.  Weeks Decl. ¶ 3(b), Ex. 2.  Assuming Defendants sold at

8   least one such package per week for the two years they were in business and sold no other posting

9   agent packages, Defendants posted at least 18,200 ads as a posting agent for a total liquidated

10  damages amount of $3,640,000.  Even assuming Defendants only sold one such package a month

11  for two years and no other posting agent packages advertised on their website, Defendants posted

12  4,200 ads as a posting agent for a total liquidated damages amount of $840,000. [8]  craigslist

13  therefore requests an award of actual damages for breach of contract between $840,000 and

14  $3,640,000.

### d.   Award of Punitive/Exemplary Damages

16      In light of the Defendants' knowing, deliberate, intentional, willful, and conscious

17  disregard for craigslist's rights, craigslist asks the Court to augment damages in this case with

18  punitive or exemplary damages against Defendants in whatever amount the Court sees fit and

19  sufficient to deter Defendants from future misconduct.  *Transgo, Inc. v. Ajac Transmission Parts*

20  *Corp.*, 768 F.2d 1001, 1024-1025 (9th Cir. 1985) (Lanham Act*); Williams v. Weisser*, 153

21  U.S.P.Q. 866, 869 (Cal. Sup. 1967) (copyright); Cal. Penal Code § 502(e)(4); Cal. Civil Code

22  § 3294.

23      Defendants are like many other individuals and companies profiting from craigslist's

24  goodwill and popular services.  An appropriate punitive or exemplary damage award is necessary

25  to stop and deter Defendants from future misconduct and to stop and deter others from the same

26  misconduct.

27      [8] The total income from selling 175 illegal ads per week for two years is $18,200.00.  The total income from selling one package of 175 illegal ads every month for two years is $4,200.00.  Both of these figures are significantly less than Defendants' $40,000 gross income from powerpostings.com.

28

CASE NO. CV 08 5065 PJH
MOTION FOR DEFAULT JUDGMENT

**C.    CRAIGSLIST IS ENTITLED TO ATTORNEYS' FEES AND COSTS**

Last, craigslist asks the Court to award its attorneys' fees and costs for pursuit of this

action.  Attorneys' fees and costs may be awarded to craigslist under the DMCA, 17 U.S.C.

§ 1203(a)(5); California Penal Code § 502(e); and the Lanham Act (if this is an exceptional case

which it is[9]), 15 U.S.C. § 1117.[10]  craigslist had no option but to pursue this action and

Defendants' default to stop their unauthorized and unlawful activities, and craigslist has prevailed.

Courts have awarded attorneys' fees and costs in similar cases.  *See Microsoft Corp. v. McGee*,

490 F. Supp. 2d at 883; *Divineo*, 457 F. Supp. 2d at 967; *Coxcom Inc. v. Chaffee*, 536 F.3d 101

(1st Cir. 2008).

craigslist's efforts expended in this matter are described in greater detail in the Declaration

of Elizabeth McDougall in Support of craigslist's Motion for Default Judgment ("McDougall

Decl.").  *See* McDougall Decl. ¶¶ 4-17.  craigslist has also submitted a matrix of the time

expended per timekeeper per category of activity.  *See* McDougall Decl.; Exhibit A.  craigslist

has incurred attorneys fees of $83,615.00 and litigation costs of $1,712.07, McDougall Decl.

¶¶ 29, 30, and therefore requests reasonable attorneys fees and costs in the total amount of

$85,327.07.

# IV.    CONCLUSION

For the foregoing reasons, and in accordance with Rule 55(b)(2) of the Federal Rules of

Civil Procedure, plaintiff craigslist respectfully requests the Court enter default judgment against

Defendants; enter a permanent injunction against Defendants restraining them from engaging in

ongoing and future abuses of craigslist's property and infringements of craigslist's legal rights (as

set forth in the Complaint's Prayer for Relief § 1 and the Proposed Order); award statutory

---

[9] The Lanham Act authorizes an award of reasonable attorneys' fees to the prevailing party in "exceptional cases," 15 U.S.C. § 1117(a), which means "cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Properties, Inc. v. Rio International, Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (citing *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982)).  As discussed above, Defendants' infringement of craiglist's mark was deliberate, willful and fraudulent.  Moreover, "[b]y virtue of the default, the [defaulting party's] infringement is deemed willful." *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y. 2003).

[10] Proof of the claims which do not provide for a discretionary award of attorneys' fees overlaps entirely with proof of craigslist's DMCA, California Penal Code § 502, and federal trademark claims for which fees may be granted.  No segregation of fees between claims for which fees may and may not be awarded is therefore necessary.

CASE NO. CV 08 5065 PJH
MOTION FOR DEFAULT JUDGMENT

1   damages under the DMCA in a total amount of $1,175,000.00; award actual damages to craigslist

2   in the amount of between $840,000 and $3,640,000; award punitive/exemplary damages to

3   craigslist in an amount the Court deems just to deter future misconduct; and award attorneys' fees

4   and costs to craigslist in the amount of $85,327.07.

5   DATED:  June 30, 2009                                      **PERKINS COIE** LLP

6

7                                                              By:/s/ Elizabeth L. McDougall
                                                                   Elizabeth L. McDougall (WA Bar No.
8                                                                  27026)
                                                                   EMcDougall@perkinscoie.com
9                                                                  Brian Hennessy (SBN 226721)
                                                                   BHennessy@perkinscoie.com
10
                                                                   Attorneys for Plaintiff
11                                                                 craigslist, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                              CASE NO. CV 08 5065 PJH
                                                              MOTION FOR DEFAULT JUDGMENT